James N. **CLINE,** Plaintiff-Appellant,

v.

**SUPREME COURT OF GEORGIA,** et al., **Defendants-Appellees.**

No. 85–8521.

United States Court of Appeals, Eleventh Circuit.

Feb. 10, 1986.

Robert E. Dunn, Atlanta, Ga., for plaintiff-appellant.

Kathryn Allen, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This Section 1983 action challenging certain Georgia state bar admission regulations presents four issues: (1) Does a Georgia rule distinguishing between graduates of approved and non-approved law schools for purposes of bar admission deny appellant substantive due process by creating an irrebuttable presumption of incompetency? (2) Does such a rule violate the equal protection clause? (3) Are appellant's procedural due process rights abridged by Georgia's limit on the number of times he may take the bar coupled with its denial of any review of his exam results? (4) Should the lower court have considered appellant's pendant state claim alleging that he had a vested property right to be governed by the rules for admission to the Georgia bar obtaining at the time he entered law school?

Because we find this case controlled by our decision in *Jones v. Board of Commissioners of Alabama State Bar*, 737 F.2d 996 (11th Cir.1984), we AFFIRM the judgment of the court below.

I

Plaintiff-appellant James C. Cline brought this action under 42 U.S.C.A. § 1983 against the Supreme Court of Georgia and its justices. He challenged the constitutionality of a rule promulgated by that court on December 20, 1978, which changed the educational prerequisites for taking the Georgia bar examination to require graduation from a law school approved by either the American Bar Association, the American Association of Law Schools, or the Georgia Board of Bar Examiners. *See* Ga.Code Ann. Ch. 9–1 App., *Rules for Admission to the Bar.*

Section 5(c) of the new 1978 rule contained a "grandfather" clause which allowed an applicant who in 1978 had either graduated from a non-approved law school, or was then attending one, a period of five years in which to take and pass the bar. The five year period for each candidate ran from December 20, 1978, or graduation from law school, whichever occurred later.

James Cline graduated from the American School of Law, an unapproved law school, in December 1979. He took the Georgia bar exam a total of six times—in 1979, 1980, 1981, 1982, 1983 and 1984—but failed on each occasion. (The Georgia bar is offered twice a year, so Cline passed up five other opportunities to take the test.) The July 1984 bar marked the end of the five year period in which Cline could take the exam without obtaining a degree from an approved law school.

Cline then filed the complaint that gives rise to this suit seeking declaratory relief from the Georgia rule. Count one alleged that Cline had a vested property right in pursuing admission to the bar because he relied on the admission rules in effect when he entered law school. Count two alleged that the 1978 rule violated the equal protection clause by discriminating between classes of bar applicants. Count three alleged that the rule was a retroactive law prohibited under Art. 1, § 1, ¶ 10 of the Georgia constitution. Count four alleged that the rule created an irrebuttable presumption of unqualification for practice for graduates of unapproved law schools, in violation of the Fourteenth Amendment.

On defendant's motion, the district judge dismissed counts one, two and four of this complaint for failure to state a federal claim, and count three (the pendant state claim) for lack of jurisdiction. Cline appeals this ruling.

II

Although Cline's arguments to this Court stray somewhat confusingly from his origi-

nal complaint, the following issues appear to be raised by this appeal.

■ First, appellant maintains that the 1978 bar examination rule unconstitutionally establishes an irrebuttable presumption that graduates of unapproved law schools are incompetent if they do not pass the bar within five years.

This issue was squarely decided by this Court in *Jones, supra.* In that case, black applicants for the Alabama state bar alleged that the rule limiting to five the number of times one can sit for the Alabama bar creates an unconstitutionally irrebuttable presumption of incompetence against those who fail the bar five times. *Id.* at 998. This Court rejected that claim, *id.* at 999, finding instead that

> [i]n adopting bar admission requirements, including the bar examination, the state in effect adopts a rebuttable presumption of incompetence, affords applicants five opportunities to rebut the presumption by passing the bar examination, and then essentially adopts as fact as to those individuals who fail the examination five times what it formerly presumed, their incompetency to practice law.

The 1978 Georgia rule establishes a similar limitation. It presumes incompetence on the part of all bar candidates and simply limits to roughly ten (eleven in the five-year period applicable to Cline) the number of chances that this small "grandfathered" class of graduates from non-approved law schools has to rebut this presumption. Thus, this claim alone offers appellant no relief.

■ However, although the Georgia rule does not create an unconstitutionally irrebuttable presumption, it does make a distinction between graduates from approved and non-approved law schools. Cline's second argument is that this distinction is impermissible under the equal protection clause of the United States Constitution.

Appellant maintains that strict scrutiny of this law is necessary because graduates of uncertified law schools constitute a suspect class. This assertion is clearly uncompelling. *Jones* concludes, along with other circuits, that "in equal protection analysis, rational basis review is appropriate for classifications affecting applicants for admission to the bar." *Id.* at 1000. Under such review, courts have repeatedly held that a state may legitimately require graduation from an accredited law school as a prerequisite for admission to the bar. *See Brown v. The Board of Bar Examiners of the State of Nevada,* 623 F.2d 605, 609 (9th Cir.1980); *Moore v. The Supreme Court of South Carolina,* 447 F.Supp. 527, 527–33, 1977, *aff'd,* 577 F.2d 735 (4th Cir.1978), *cert. denied,* 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1978); *Hackin v. Lockwood,* 361 F.2d 499 (9th Cir.1966). Similarly, in examining the Georgia rule, we seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose. *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). We agree with the conclusion of the district court in this case that the 1978 rule is rationally related to Georgia's legitimate goal of ensuring a competent bar.

Appellant's third contention is that his right to procedural due process is infringed by the combined effect of this rule, which limits his opportunities to take the bar, and Georgia's general refusal to grant any review of test results. However, since the district court had no opportunity to examine this contention, this Court must decline to consider it as well. *Harris v. Schwerman Trucking Company,* 668 F.2d 1204, 1206 n. 2 (11th Cir.1982). We note, however, that this issue is again controlled by *Jones,* in which we concluded that, even with a five-time limitation, re-examination is sufficient to protect candidates against the risk of arbitrary error with or without the very limited candidate review of testing sometimes permitted. *Jones, supra,* at 1003.[1]

1. In *Poats v. Givan,* 651 F.2d 495, 499 (7th Cir.1981) (per curiam), the Seventh Circuit calculated that the chances are one in one hundred million that the same individual would be the victim of mechanical or arbitrary error on four separate examinations.

Finally, since appellant's federal claims were properly dismissed prior to trial, his pendant state claim, asserting that he was retroactively deprived of a vested property right, was also properly dismissed. *Gibbs v. United Mine Workers*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

We AFFIRM the judgment of the district court.